UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN L. HORACE,

                         Plaintiff,

v.                                        **DECISION AND ORDER**
                                                        14-CV-655S

KEVIN GIBBS, *Field Parole Officer*, and
DAWN ANDERSON, *Senior Parole Officer*,

                         Defendants.

## I. INTRODUCTION

In this action, *pro se* Plaintiff John L. Horace alleges under 42 U.S.C. § 1983 that Defendants Kevin Gibbs and Dawn Anderson, two state parole officers employed by the New York State Department of Corrections and Community Supervision, violated his Eighth and Fourteenth Amendment rights when they used excessive force and were deliberately indifferent to his medical needs while arresting him for a parole violation on December 3, 2013.

Now before this Court is Defendants' motion to dismiss Horace's claims. (Docket No. 27.) For the reasons that follow, Defendants' motion is granted in part and denied in part.

## II. BACKGOUND

The following facts, drawn from Horace's complaint, are assumed true for purposes of assessing Defendants' motion to dismiss. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

At 12:30 p.m. on December 3, 2013, Defendants and other officers arrived at Horace's house to arrest him for violating the conditions of his parole and to search his residence. (Complaint ("Compl."), Docket No. 1, Section VI ¶ 14.) Upon entering the house, Gibbs informed Horace that he violated parole by driving a car without Gibb's permission. (Compl. Section VI ¶ 14.) Gibbs then handcuffed Horace behind his back "so tightly there w[as] hardly any space between [P]laintiff's wrist and the handcuffs" and ordered him to sit in a chair. (Compl. Section VI ¶ 14.)

At 12:40 p.m., Horace complained to Gibbs that his handcuffs were too tight and were causing him pain. (Compl. Section VI ¶ 14.) He asked Gibbs to loosen the handcuffs because his hands were swelling and the pain was getting worse. (Compl. Section VI ¶ 14.) Gibbs refused to loosen the handcuffs, and then he and Anderson searched Horace's residence while Horace waited in the chair. (Compl. Section VI ¶ 15.) During the search, Horace "call[ed] out" and told Gibbs and Anderson that he was diabetic, that he felt dizzy, and that his handcuffs were hurting his wrists. (Compl. Section VI ¶ 16.) Defendants ignored Horace until approximately 1:00 p.m., when they told him they would be downstairs shortly. (Compl. Section VI ¶¶ 16, 17.) Horace was upset and worried that the tight handcuffs were causing him to have low blood sugar, that he could fall off his chair, and that he could pass out from high blood pressure. (Compl. Section VI ¶ 17.)

At 1:15 p.m., Defendants escorted Horace to their squad car and put him in the back seat. (Compl. Section VI ¶ 19.) Horace claims that front seat of the car was pushed back so that it was close to the back seat, which forced him into a position that put pressure on his herniated disks in his lower back and caused pain in his right knee.

(Compl. Section VI ¶¶ 19, 20.) Defendants then took Horace to their offices. (Compl. Section VI ¶ 20.)

At about 2:05 p.m., Gibbs transported Horace from the Division of Parole offices to the Monroe County jail. (Compl. Section VI ¶ 21.) By this time, Horace's wrists were swollen, his fingers were numb, he was unable to move his wrists and fingers, and the handcuffs were embedded into his skin, causing a permanent mark on his left hand. (Compl. Section VI ¶ 21.)

At about 2:25 p.m., Gibbs and Horace arrived at the Monroe County jail, where a Monroe County Sheriff Deputy "had a hard time removing the handcuffs" because of Horace's swollen wrists. (Compl. Section VI ¶ 21.)

Later that evening, medical staff at Monroe County jail kept Horace under observation and gave him insulin for low blood sugar. (Compl. Section VI ¶ 22.)

Horace alleges that he sustained several injuries during the course of his arrest. He claims that the handcuffs "cut into his skin," embedded themselves into his wrists, and caused his wrists to swell to twice their normal size. (Compl. Section III at 2; VI ¶ 21.) He further contends that the handcuffs left "deep indentation[s] . . . on both wrists" and a "permanent scar" on his left wrist. (Compl. Section III at 2.)

Horace also claims that Gibbs aggravated his pre-existing conditions in his back (herniated discs) and knee (previous surgery) when he forced him to sit in "an uncomfortable position" in the squad car while being transported, which put "tremendous pressure" on his back and right knee. (Compl. Section III at 2, VI ¶ 20.)

3

Finally, Horace alleges emotional anguish and distress due to his fear that his blood sugar was getting low and his circulation was being cut-off, which could aggravate his diabetes. (Compl. Section III at 2.)

### III. DISCUSSION

Cognizant of the distinct disadvantage that *pro se* litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This is especially important when reviewing pro se complaints alleging civil rights violations. See Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001). Because Plaintiff is proceeding *pro se*, this Court has considered his submissions and arguments accordingly.

Horace asserts that Defendants used excessive force against him and were deliberately indifferent to his serious medical needs, in violation of his Fourth[1] and Fourteenth Amendment rights. (Compl., Section II ¶ 7.) Defendants seek dismissal of both claims for failure to state a claim upon which relief can be granted under Rule 12 (b)(6) of the Federal Rules of Civil Procedure. (Docket No. 27.)

---

[1] As noted, Horace identifies the Eighth Amendment as the source of his excessive force claim. In fact, Horace's claim properly arises under the Fourth Amendment, because the excessive force is alleged to have occurred during a parolee's arrest for a parole violation. See Cox v. Fischer, No. 14-CV-1862 (RA), 2017 WL 1215091, at *4 (S.D.N.Y. Mar. 31, 2017) (noting that "a parolee's claim that he was subjected to excessive force in the course of an arrest for a violation arises under the Fourth Amendment, not the Eighth Amendment"). This Court will therefore consider Horace's excessive force claim under the Fourth Amendment.

4

## A. Rule 12 (b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8 (a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, 493 F.3d at 98. Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and legal conclusions, are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

**B.     42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. To properly plead a cause of action under § 1983, a plaintiff's complaint must include allegations that the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983. See Haygood v. City of New York, 64 F. Supp. 2d 275,

6

280 (S.D.N.Y. 1999). Thus, personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983. See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement need not be active participation. It can be found "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). Thus, personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that constitutional acts were occurring.

Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140. Here, Horace asserts claims under the Fourth and Fourteenth Amendments.

**C.     Fourth Amendment Excessive Force Claim**

Although Horace identifies the Eighth Amendment as the source of his excessive force claim, it in fact arises under the Fourth Amendment, because the excessive force is alleged to have occurred during a parolee's arrest for a parole violation. See Cox v. Fischer, No. 14-CV-1862 (RA), 2017 WL 1215091, at *4 (S.D.N.Y. Mar. 31, 2017) (noting that "a parolee's claim that he was subjected to excessive force in the course of an arrest for a violation arises under the Fourth Amendment, not the Eighth Amendment"); see also Rushion v. NYS Div. of Parole, No. 13-CV-4277 (RRM), 2016 WL 5255812, at *4 (E.D.N.Y. Sept. 21, 2016) ("Allegations by a parolee that he was subjected to excessive force while being arrested by his parole officer for a parole violation are analyzed under the Fourth Amendment."); Rivera v. Madan, No. 10-CV-4136 (PGG), 2013 WL 4860116, at *8 (S.D.N.Y. Sept. 12, 2013).

8

The Fourth Amendment is applicable to the States by way of the Fourteenth Amendment. Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135, 124 L. Ed. 2d 334 (1993). The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. Fourth Amendment excessive force claims are analyzed under a standard of objective reasonableness. Graham, 490 U.S. at 394. Law enforcement officers' application of force is excessive, and thus in violation of the Fourth Amendment, if it is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Roberites v. Huff, No. 11-CV-521S, 2013 WL 5416943, at *3 (W.D.N.Y. Sept. 26, 2013) (quoting Graham, 490 U.S. at 397). In determining whether an officer's actions were reasonable, the actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' . . . violates the Fourth Amendment." Graham, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

"Law enforcement officers' use of force in an arrest is excessive in violation of the Fourth Amendment if it is 'objectively unreasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'" Mayes v. Vill. of Hoosick Falls, 162 F. Supp. 3d 67, 88 (N.D.N.Y. 2016) (quoting Papineau v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006)). When the use of handcuffs gives rise to a Fourth Amendment claim, the reasonableness of force is measured in light of (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists. Roberites, 2013 WL

5416943, at *3; Mayes, 162 F. Supp. 3d at 88 (collecting case). This standard reflects the balance between overly tight handcuffing and the need to use some degree of physical coercion to maintain custody and prevent an arrestee's hands from slipping out of the handcuffs. Usavage v. Port Auth. of New York & New Jersey, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013); Esmont v. City of New York, 371 F. Supp. 2d 202, 214–15 (E.D.N.Y. 2005). "This inquiry must reflect the totality of the circumstances, including any facts that bear on whether use of an unusual degree of force may have been justified." Roberites, 2013 WL 5416943, at *3.

The injury requirement is "particularly important." Sachs v. Cantwell, No. 10 Civ. 1663 (JPO), 2012 WL 3822220, at *14 (S.D.N.Y. Sept.4, 2012). "Courts have found that handcuffing can give rise to a § 1983 excessive force claim where plaintiff suffers an injury as a result." Gonzalez v. City of New York, No. 98 Civ. 3084, 2000 WL 516682, at *4 (E.D.N.Y. Mar.7, 2000); Sachs, 2012 WL 3822220, at *14 ("While the application of tight handcuffs alone can give rise to a cause of action under § 1983, 'the plaintiffs must suffer some form of injury from the tight handcuffs in order for such a claim to be actionable.'") (quoting Vogeler v. Colbath, No. 04 Civ. 6071, 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005)). "[I]f the application of handcuffs was merely uncomfortable or caused pain, that is generally insufficient to constitute excessive force." Gonzalez, 2000 WL 516682, at *4. The injuries need not be "severe or permanent," Vogeler v. Colbath, No. 04 Civ. 6071, 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005), but must be more than merely "*de minimis*," Washpon v. Parr, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008). See also Mesa v. City of New York, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) ("[W]hile a sustained injury that requires doctors' visits is not a necessary element

of a successful excessive force claim, where a plaintiff suffers from *de minimis* injury, it is more difficult to establish that the force used was excessive in nature." (citations omitted)). The most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage. Roberites, 2013 WL 5416943, at *4; see, e.g., Washpon, 561 F. Supp. 2d at 407 (scarring); Esmont, 371 F. Supp. 2d at 214–15 (nerve damage); Simpson v. Saroff, 741 F. Supp. 1073, 1078 (S.D.N.Y. 1990) (scarring).

Here, assuming the truth of Horace's allegations, as required at this stage, this Court finds that he sufficiently states a Fourth Amendment excessive force claim.

First, he alleges that his handcuffs were unreasonably tight. He alleges that Gibbs applied the handcuffs "so tightly there w[as] hardly any space between [P]laintiff's wrist and the handcuffs." (Compl. Section VI ¶ 14.) He further alleges that the handcuffs were so tight that they caused indentations in his wrists, caused his wrists and fingers to go numb, and caused his wrists to swell to twice their normal size. (Compl. Section VI ¶¶ 14, 21.)

Second, Horace alleges that Defendants ignored his pleas that the handcuffs were too tight. He alleges that he asked Gibbs to loosen the handcuffs because his hands were swelling and because the pain was getting worse, but Gibbs refused. (Compl. Section VI ¶¶ 14, 15.) He further alleges that during the search of his residence, he "call[ed] out" and told Gibbs and Anderson that he was diabetic, that he felt dizzy, and that his handcuffs were hurting his wrists. (Compl. Section VI ¶ 16.) Defendants ignored that plea as well. (Compl. Section VI ¶¶ 16, 17.)

Finally, Horace alleges that he suffered more than discomfort or *de minimis* injuries. He alleges that the handcuffs "cut into his skin," embedded themselves into his

11

wrists, and left "deep indentation[s] . . . on both wrists" and a "permanent scar" on his left wrist. (Compl. Section III at 2; VI ¶ 21; Compl. Section III at 2.)

Accordingly, because Horace adequately alleges that his handcuffs were unreasonably tight, that his pleas were ignored, and that he suffered permanent injury, Defendants' motion to dismiss Horace's Fourth Amendment excessive force claim is denied.

**D.      Fourteenth Amendment Deliberate Indifference Claim**

A pre-trial detainee's claim of deliberate indifference to serious medical needs is governed by the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, which is the source of the same right for convicted prisoners. Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017); Thomas v. Nassau County Corr. Ctr., 288 F. Supp. 2d 333, 337 (E.D.N.Y. 2003). This is because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." Darnell, 849 F.3d at 29 (citation and internal quotation marks omitted).

To sustain a Fourteenth Amendment deliberate indifference claim, a plaintiff must allege deliberate indifference to a "sufficiently serious" medical need. Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). A medical need is "serious" if "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Harrison v. Barkley, 219 F.3d 132, 136–37 (2d Cir. 2000) (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). Chance sets forth several factors relevant to this inquiry, including whether the plaintiff has "an injury that a reasonable doctor or patient would find important and worthy of comment or

12

treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." 143 F.3d at 702.

Here, Horace fails to allege a plausible claim for deliberate indifference to a serious medical need. Horace's distress related to his diabetes, low blood sugar, and high blood pressure is not a sufficiently serious medical condition, and in any case, Horace concedes that he was given insulin at the Monroe County jail. (Compl. Section VI ¶ 22.) Similarly, Horace's claims that he was seated in an uncomfortable position that aggravated his pre-existing back and knee conditions are not actionable. (Compl. Section III at 2, VI ¶ 20.) Finally, the temporary injuries Horace allegedly received from the handcuffs—pain, swelling, cuts— are likewise not sufficiently serious because they lack permanence and do not amount to conditions that may produce death, degeneration, or lasting extreme pain. See White v. Schriro, 16 Civ. 6769 (PAE)(JCF), 2017 WL 3268202, at *3 (S.D.N.Y. July 31, 2017) (quoting Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005), in turn quoting, Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998)).

Accordingly, Defendants' motion to dismiss Horace's Fourteenth Amendment deliberate indifference claim is granted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Horace's Fourth Amendment excessive force claim will proceed, but his Fourteenth Amendment deliberate indifference claim is dismissed.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 27) is GRANTED in part and DENIED in part, consistent with the foregoing decision.

SO ORDERED.

Dated: September 29, 2017
       Buffalo, New York

                                                              /s/William M. Skretny
                                                              WILLIAM M. SKRETNY
                                                              United States District Judge