UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

John L. Horace,

                        Plaintiff,

    v.

Kevin Gibbs and
Dawn Anderson,

                        Defendants.

**Report and Recommendation**

14-CV-655S

---

## I.    INTRODUCTION

Defendants Kevin Gibbs ("Gibbs") and Dawn Anderson ("Anderson") were among the New York State parole officers who arrested plaintiff John Horace ("Horace") on December 3, 2013 and searched his residence for evidence of parole violations. Horace insists that, during the arrest and the search, Gibbs and Anderson handcuffed him so tightly that he suffered permanent damage to his wrists. Horace subsequently filed suit, claiming that Gibbs and Anderson used excessive force in violation of his Fourth Amendment rights. Familiarity with other facts in the record is presumed.

The parties now have three motions pending, including cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Dkt. Nos. 71, 78, 80.) In short, Horace has repeated his assertions about the nature of his wrist injuries, while Gibbs and Anderson have emphasized the absence in the medical record of any complaints about or treatments for wrist injuries. District Judge William M. Skretny has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 76.) The Court has deemed the motions submitted on papers under Rule 78(b). For the reasons below, the Court respectfully recommends granting Gibbs and Anderson's motion.

## II. BACKGROUND

This case concerns allegations of excessive force used during a parole arrest—force applied by way of excessively tight handcuffs. From 1996 until early 2013, Horace was incarcerated in state prison on charges related to sexual abuse of comatose and other helpless medical patients; theft of several thousand dollars' worth of medical equipment and products; and attempts to operate a fraudulent sex therapy practice and to bill insurance carriers for sex therapy. Horace was released to parole supervision on March 4, 2013. Over the next few months, parole officers developed reasons to believe that Horace was violating multiple conditions of parole—conditions such as avoiding operation of motor vehicles and avoiding any representation of himself as a sex therapist. An investigation led to an arrest warrant for violation of parole conditions. On December 3, 2013, parole officers, including Gibbs and Anderson, arrested Horace and searched his residence. Detaining Horace involved handcuffing him for about 2-1/2 hours, starting at his residence and ending at the Monroe County Jail. Gibbs and Anderson have denied that Horace complained about his handcuffs being too tight or about any medical symptoms involving his wrists. Horace insists that the handcuffs were applied so tightly that they caused pain, swelling, and a permanent mark on his left hand. Horace asserts that Gibbs and Anderson ignored him when he reported the pain and swelling.

Horace filed suit on July 16, 2014. (Dkt. No. 1.) Horace claimed a number of civil rights violations, but during Rule 12 motion practice, Judge Skretny narrowed Horace's claims to one claim of excessive force in violation of the Fourth Amendment. (Dkt. No. 42 at 12.) The alleged excessive force concerned the handcuffs.

The medical information that appears in the record makes no mention of handcuffs. On December 10, 2013, Horace requested medical attention for what reads like an abscess in one of his

2

gums. (Dkt. No. 62 at 86.) Horace made a repeat request for dental attention on December 13, 2013. (*Id.* at 87.) Other requests for medical attention in December 2013 covered low blood sugar; additional dental problems; burning eyes; and back pain. (*Id.* at 88–91.) Requests in early 2014 covered an oral sore; dry skin; lower back and right knee pain; eyeglasses; an ingrown toenail; and more dental care. (*Id.* at 100–22.) Other records addressed an ankle ulcer; prescription renewals; cold-like symptoms; foot pain; dry skin; compression stockings; diabetes; and other issues from 2014 forward. (Dkt. No. 67.) These medical records do not contain any mention of Horace's wrists. During the numerous medical visits that generated his medical records, Horace at no time mentioned any problem or symptom related to his wrists. Two photographs of Horace's wrists from 2017 appear to show some discoloration but nothing that would contradict the complete absence in the medical records of any mention of his wrists. (Dkt. No. 70 at 3, 5.)

The parties now have moved to dispositive motion practice. Horace has filed a mix of dispositive and non-dispositive motions. (Dkt. Nos. 71, 78.) These motions rehash discovery issues that have since been closed; arguments dismissed previously by Judge Skretny; and long discussions about the underlying substance of his state parole violations. The Court will not address that material, only the portions of Horace's papers that can be construed as a motion for summary judgment on his surviving claim. On July 13, 2018, Gibbs and Anderson filed their motion for summary judgment. (Dkt. No. 80.) Gibbs and Anderson note the ways in which Horace tries to relitigate dismissed claims. As for the Fourth Amendment claim, Gibbs and Anderson point to the absence of medical documentation to argue that, even if Horace suffered any injury from the handcuffs, the injury was *de minimis* and not subject to further legal action. Gibbs and Anderson also make a brief argument that they are entitled to qualified immunity for the events of December 3, 2013.

3

**III.    DISCUSSION**

   ***A.  Summary judgment generally***

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). "Where, as here, the nonmovant would bear the burden of proof at trial, the movant may show prima facie entitlement to summary judgment by either (1) pointing to evidence that negates its opponent's claims or (2) identifying those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact." *Barlow v. Male Geneva Police Officer who Arrested me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (summary order) (internal quotation and editorial marks and citation omitted).

The standard for summary judgment does not change when both sides file cross-motions seeking the same relief. "When each side has moved for summary judgment, the district court in entertaining the motions—and the court of appeals in reviewing the district court's decisions—are required to assess each motion on its own merits and to view the evidence in the light most

favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011) (citations omitted). "[W]hen both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it. When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (citation omitted).

Additionally, the Court is mindful of Horace's *pro se* status. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest. This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation and editorial marks and citations omitted). The Court also realizes that Horace's *pro se* status places him at a relative disadvantage with respect to the development of his case. "While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder

5

could base a verdict in the plaintiff's favor." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted).

### B. Excessive force and the absence of medical evidence

The Court next examines Horace's claim for excessive force. "As we have said many times, § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). Between Horace's papers and Gibbs and Anderson's arguments—including the argument for qualified immunity—the Court discerns two slightly different Fourth Amendment rights that potentially are in play. One right concerns excessive force in the decision to handcuff Horace under any circumstances. (*See* Dkt. No. 80-1 at 19 ("Therefore, the dispositive inquiry in this action is not whether excessive force violates the Fourth Amendment. To the contrary, this is exactly the type of qualified immunity analysis rejected by our courts. Rather, the correct inquiry is whether on December 3, 2013, Defendants Gibbs and/or Anderson were aware that placing plaintiff in handcuffs for a short time while his residence was searched and he was transferred to the Monroe County Sheriff's custody violated any clearly established constitutional right of which a reasonable person would have known.").) The other right concerns excessive force in how tightly Gibbs and Anderson handcuffed Horace and any injuries that might have resulted.

The Court will first address the latter right identified above because it fully resolves the matter. "While handcuffs must be reasonably tight to be effective, handcuffs that are overly tight may constitute an excessive use of force on the part of the officer using them. In evaluating the reasonableness of handcuffing, a court is to consider evidence that: 1) the handcuffs were

6

unreasonably tight; 2) the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists. There is a consensus among District Courts in this Circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort and bruising." *Hollins v. City of New York*, No. 10 CIV. 1650 LGS, 2014 WL 836950, at *9 (S.D.N.Y. Mar. 3, 2014) (internal quotation and editorial marks and citations omitted). Here, Horace has presented no information that raises a triable question of fact about any injuries that he suffered from the handcuffing on December 3, 2013. The record shows that Horace received medical attention numerous times in the years following the handcuffing. During all of those medical visits, Horace presented numerous symptoms and complaints about different parts of his body: dental problems, back pain, knee pain, cold-like symptoms, foot pain, dry skin, circulation needing compression stockings, and diabetes, to name just a few. At no time did Horace say anything about problems with his wrists, let alone problems with his wrists stemming from the handcuffing. *Cf. id.* at *9 (summary judgment for handcuff "pain and bruising that lasted only a day"); *see also, e.g., Sachs v. Cantwell*, No. 10 CIV. 1663 JPO, 2012 WL 3822220, at *15 (S.D.N.Y. Sept. 4, 2012) ("Plaintiff does not show that she sought medical attention for the injury to her wrists any time after the incident, even though she was taken by EMS to Bellevue Hospital the night of the incident, and visited Lenox Hill Hospital for knee pain the day after."); *Wilder v. Village of Amityville*, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) ("Plaintiff's allegation of sore, yet uninjured, wrists simply does not rise to the level of objective excess that reasonable police officers would consider to be unlawful conduct in an arrest situation."). In the face of an undisputed medical record that is conspicuously silent with respect to any wrist problems, Horace has only his own testimony. Horace's testimony suggests that any wrist problems that he experienced after the handcuffing were minor and did not last long:

Q. So at what point—you said you had numbness. At what point did that go away?

A. The numbness went away after I had the cuffs removed from my hands.

Q. Okay. You said you felt half numbness?

A. Well, it was complete numbness—half numbness, complete numbness. I didn't have any feelings in my finger, if that explains numbness. I couldn't—I rubbed my fingers behind my back and I couldn't feel anything. My hands were swollen twice the normal size.

Q. And let's go back—

A. My fingers were swollen and I didn't have any feelings at all.

Q. So when did the swelling go down?

A. After the cuffs was taken off.

Q. How long after?

A. Probably half hour to get back to normal.

Q. And the numbness you said went away within about the same time?

A. About the same time.

Q. Now you said you had cuts on your wrist?

A. Yes.

Q. Where were they?

A. All around, like here—

Q. Describe it for the record.

A. They wasn't really deep cuts.

Q. Superficial cuts?

A. Yeah. Like broken skin.

Q. Was there bleeding or no?

A. The scar had a little bit of blood. They weren't really bleeding.

(Dkt. No. 80-6 at 66–67.) Under these circumstances, even if the Court fully credited Horace's

testimony, no reasonable jury could conclude that Horace suffered an injury of enough severity to cross the threshold of a Fourth Amendment violation.

With Horace unable to establish any triable issue of fact regarding injuries stemming from the handcuffing, the Court need not address whether or how qualified immunity would apply in this case. *See Soares v. State of Connecticut*, 8 F.3d 917, 922 (2d Cir. 1993) ("[T]here is still no clear authority on whether and under what circumstances, if any, a person has a constitutional right not to be handcuffed in the course of an arrest.").

## IV.   CONCLUSION

For all of the above reasons, the Court respectfully recommends granting Gibbs and Anderson's motion for summary judgment (Dkt. No. 80.) The Court further recommends denying both of Horace's pending motions (Dkt. Nos. 71, 78.)

## V.   OBJECTIONS

A copy of this Report and Recommendation will be sent to Horace by first-class mail, and to counsel for Gibbs and Anderson by electronic filing, on the date below. "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted). "We have adopted the rule that failure to object timely to a magistrate

judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object.  The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record.  Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review.  Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: October 9, 2018